# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | | |
|---|---|---|
| MARK A. LARIVEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:05-CV-181-BH |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the provisions of Title 28, United States Code, Section 636(c), and an Order of the Court dated January 9, 2006, in implementation thereof, subject cause has been transferred to the undersigned United States Magistrate Judge. Before this Court are *Brief for Plaintiff*, filed January 17, 2006, and *Defendant's Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment* with brief in support, filed May 12, 2006. Plaintiff did not file a reply. Having reviewed the evidence of the parties in connection with the pleadings, the final decision of the Commissioner is **AFFIRMED**.

### I. BACKGROUND[1]

**A. Procedural History**

Mark A. Larivee ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits. Plaintiff filed an application for disability benefits under Title II of the Social Security Act on May 9, 2001. (Tr. at

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

17, 82-91). Plaintiff claimed he was disabled since August 31, 2000, due to (1) ileostomy,[2] (2) diabetes, (3) knee injury, (4) high blood pressure, and (5) pancreatitis surgery. (Tr. at 83). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 65-68, 57-59). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 61). A hearing, at which Plaintiff personally appeared and testified, was held on May 13, 2003. (Tr. at 34-54). On June 30, 2003, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 23). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 4-6). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 4). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on September 30, 2005.

**B. Factual History**

   *1. Age, Education, and Work Experience*

Plaintiff was born on November 30, 1952. (Tr. at 76, 38). He holds a bachelor's degree in applied arts and sciences and has technical training in power production. (Tr. at 38, 89). He spent 26 years in the United States Air Force as a power production specialist. (Tr. at 39, 47-48, 92).

   *2. Medical Evidence*

On March 13, 1989, Plaintiff was admitted to the Sheppard Air Force Base hospital after a horse fell on top of him and damaged his left knee. (Tr. at 147). Dr. Robert Shackelford, M.D., an orthopedic surgeon, diagnosed Plaintiff with lateral compressive type of instability, tender medial

---

[2]An ileostomy is the surgical formation of an artificial anus by connecting part of the small intestine to an opening in the abdominal wall. ONLINE MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Sept. 17, 2007).

ligaments, joint compression, and a lateral tibia plateau fracture. *Id*. The next day, Plaintiff underwent open reduction and internal fixation with an iliac crest bone graft. (Tr. at 148). Dr. Shackelford noted that Plaintiff "progressed satisfactorily" and that the surgical site healed well. *Id*. Plaintiff was ambulatory in the hospital hall by March 19, and he was discharged on March 20, 1989. *Id*. Plaintiff occasionally sought medical treatment from Air Force doctors for his knee problem in the years following his surgery. (*See e.g.*, Tr. at 253, 262). The Air Force restricted him from running and weight-bearing exercises due to his knee injury but noted that he could exercise by means of stationary bike, swimming, and water aerobics. (Tr. at 257).

On August 24, 2000, Plaintiff was admitted to the Sheppard Air Force Base hospital following abdominal pain, distention, nausea and vomiting. (Tr. at 158). He underwent a CT scan on August 29, 2000, and was diagnosed with pancreatic inflammation and pancreatitis. *Id*. After unsuccessful conservative treatment, he was transferred to the United Regional Health Care System Hospital (hereinafter, "United Regional") in Wichita Falls, Texas on September 9, 2000. (Tr. at 158, 206). Dr. Rick Ho, M.D., diagnosed Plaintiff with: (1) necrotizing pancreatitis with all secondary complications, including pulmonary complications; (2) diarrhea, probably secondary to the pancreatitis and maldigestion; and (3) fever of 104 degrees, which could indicate a pancreatic abscess. (Tr. at 159).

On September 11, 2000, Dr. Kenneth Warnock, M.D., operated on Plaintiff's abdomen and performed a (1) cholecystectomy;[3] (2) subtotal pancreatectomy and drainage of complex pancreatic

---

[3] Surgical removal of the gall bladder. ONLINE MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Sept. 18, 2007).

and retroperitoneal abscess;[4] and (3) subtotal colectomy[5] with ileostomy. (Tr. at 156). Three days later, on September 14, 2000, Plaintiff again underwent surgery for (1) drainage and cleansing of the abscess; (2) placement of a feeding jejunostomy[6] tube; and (3) maturation of ileostomy. (Tr. at 155). Following this second surgery, Dr. Warnock noted that Plaintiff "had a surprisingly speedy recovery." (Tr. at 153). At the time of Plaintiff's discharge on September 26, 2000, Dr. Warnock wrote that despite some lymph drainage, Plaintiff was "home and in good condition" and that his diabetes was "under pretty good control with insulin." *Id*.

Plaintiff saw Dr. Warnock and Dr. Ho ten times for post-surgical follow-up visits between October and December 2000. (Tr. at 413-16). Plaintiff experienced some drainage on his right side, but this eased with time. (*See* Tr. at 415-16). Apart from the drainage, his doctors noted that he was "doing very well otherwise." (Tr. at 415). Dr. Warnock noted that his diabetes was "under good control" and that he was "pleased to see his continue (sic) progress." (Tr. at 416). Dr. Ho noted on October 30, 2000, that Plaintiff "has actually made a remarkable recovery despite" his major abdominal surgery. (Tr. at 414). Dr. Ho observed on December 6, 2000, that Plaintiff's "pancreatitis is nearly totally resolved" and that Plaintiff was "feeling extremely well." *Id*. A CT scan of the abdominal region on December 11, 2000, was "unremarkable." (Tr. at 413). Approximately three months later, Dr. Warnock noted that Plaintiff's "strength and functional

---

[4]Surgical removal of part of the pancreas and drainage of a localized collection of pus from inflamed tissue. ONLINE MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Sept. 18, 2007).

[5]Surgical removal of part of the colon. ONLINE MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Sept. 18, 2007).

[6]A jejunostomy creates an opening in the abdomen to the upper section of the small intestine. ONLINE MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Sept. 18, 2007).

capacity is better probably that it has been in a couple of years. He is managing his diabetes and his pancreatic insufficiency I think quite well." *Id.*

Dr. Rajesh Iurelli, M.D., at Sheppard Air Force Base oversaw Plaintiff's diabetes treatment and management. (Tr. at 412). On April 11, 2001, Dr. Iurelli observed that although Plaintiff's diabetes mellitus was a "significant problem" and his hypertension was a "problem," both ailments were under control and Plaintiff seemed to be doing fairly well. (Tr. at 410).

Plaintiff returned to the United Regional on August 23, 2001, for a review of the previous September's surgery. (Tr. at 392). Dr. Warnock noted that due to the cessation of smoking and alcohol use, Plaintiff's "cardiopulmonary status has improved dramatically." *Id.* He also noted that due to exercise, Plaintiff was "probably in better shape physically than he's been possibly even in several years." *Id.* Plaintiff again underwent abdominal surgery, this time to remove the ileostomy bag and close the abdominal opening. (Tr. at 390). Dr. Warnock noted that Plaintiff "did exceptionally well" postoperatively. *Id.* He was discharged on August 29, 2001. *Id.*

On October 11, 2001, Dr. George John, M.D., a non-examining State Agency Medical Consultant ("SAMC") reviewed Plaintiff's medical records. (Tr. at 429-436). Dr. John determined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; sit, stand and/or walk approximately 6 hours in an 8-hour work day; and had an unlimited capacity to push and/or pull. (Tr. at 430). Dr. John noted that the evidence supported Plaintiff's allegations of disability for a three to six month period but that the allegations of disability as of the reviewing date were not currently supported. (Tr. at 434).

In a follow-up visit on October 16, 2001 for his August ileostomy reversal, Dr. Ho wrote that Plaintiff "has been pretty much disabled ever since he had necrotizing pancreatitis during the last

twelve months." (Tr. at 406). He went on to note that as of the examination date, Plaintiff "did well from surgery" and that the "only problem is the multiple surgical scars" and some lingering pain. *Id*. Dr. Ho advised Plaintiff not to lift anything more than 35 pounds. *Id*.

### *3. Hearing Testimony*

A hearing was held before the ALJ on May 13, 2003. (Tr. at 34). Plaintiff appeared personally and was represented by an attorney. *Id.*

### *1. Plaintiff's Testimony*

Plaintiff testified that he was born on November 30, 1952, and that he was 50 years old on the day of the hearing. (Tr. at 38). He was 5 feet 11 inches tall and weighed 200 pounds. *Id*. He recently finished his bachelor's degree in applied arts and sciences but never utilized this education, although he hoped to do so. (Tr. at 38-39).

Plaintiff retired from the United States Air Force after 26 years of service; he last served as a senior sergeant in a management position in the civil engineering squadron. (Tr. at 39). The duties of his most recent position with the Air Force included supervising staff who conducted safety inspections. (Tr. at 47). From June of 1992 to June of 1996, Plaintiff testified that he worked as a power plant chief, managed 85 civilians, and served as the liaison between the military and the civilian workforce. (Tr. at 48; *see* Tr. at 92). From May of 1990 to June of 1992, Plaintiff was deputy chief of operations at the power plant. *Id*. From May of 1985 to May of 1990, Plaintiff testified that he worked as a technical instructor for the Air Force. *Id*.

Plaintiff testified that he last worked in August of 2000 and that he was no longer working because of pain in his abdomen, knee, and foot. (Tr. at 39). Plaintiff testified that his left knee underwent reconstructive surgery after a horse crushed it. (Tr. at 40). When asked whether his left

knee currently bothered him, he testified that it did not, as long as he did not overuse it through sports, extended walking, running, or jumping. (Tr. at 40, 43). He had high blood pressure prior to his retirement from the Air Force. (Tr. at 39). Plaintiff then described the major abdominal surgery he received in August and September of 2000 and testified that his ileostomy was reversed in September of 2001. (Tr. at 40-41). Plaintiff testified that but for his pain, he would have been able to work, even with the ileostomy bag. *Id.*

To control his pain, Plaintiff took Darvocet, which he said affected his ability to concentrate. (Tr. at 42, 44). He did not lift anything over 30 pounds, and did not bend, stoop, or twist. He estimated that he could sit still for 45 minutes at a time and that he could stand for two to three hours at the most. (Tr. at 42-43). He stated that he took frequent naps and that the most physical thing he had done in the past several years was mow his lawn, which took him 45 minutes to an hour. (Tr. at 43-44).

Finally, Plaintiff testified that he was not searching for employment because no one had responded to the many applications he submitted to positions listed on the Air Force hiring website. (Tr. at 44).

### *2. Witness Testimony*

Brenda Larivee, Plaintiff's wife, testified that her husband was "always in a lot of pain" and that he was "woozy" from his pain medication. (Tr. at 45-46). She said that Plaintiff had difficulty staying awake and was exhausted and uncomfortable all the time. (Tr. at 46). She also testified that Plaintiff used the restroom frequently throughout the day and several times at night. *Id.*

### *3. Vocational Expert Testimony*

The ALJ then heard testimony from Clifton King, a vocational expert ("VE"). The VE testified that it was difficult to classify Plaintiff's past worked in the military according to the Dictionary of Occupational Titles ("DOT"). (Tr. at 47, 49). However, all of Plaintiff's work with the Air Force could be classified as light, upper-level skilled positions. (Tr. at 49-50). The DOT classification that corresponded to Plaintiff's work as a power plant chief was listed as sedentary, but the VE doubted this characterization. (Tr. at 50).

The ALJ asked the VE whether a hypothetical person with Plaintiff's age and skill background could perform a sedentary job with normal stresses that provided the opportunity to stand and flex at will. *Id*. The VE testified that such a person would be able to work as an attendance clerk (sedentary, upper-level skilled, with approximately 1,800 to 2,000 jobs in Texas and 35,000 nationally); grade clerk (sedentary, semi-skilled, with approximately 10,000 jobs in Texas and 120,000 nationally); and maintenance scheduler (sedentary, semi-skilled, with approximately 2,500 jobs in Texas and 60,000 nationally). (Tr. at 50-51). The ALJ then asked whether such a person with poor attendance, poor mental concentration, limited productivity in the last hour of an 8-hour work day, or difficulty dealing with work-related stress would be able to maintain employment in any of these positions. (Tr. at 51-52). The VE testified that such limitations likely would prevent such a person from maintaining employment. *Id*.

Under examination by Plaintiff's attorney, the VE testified that there would be a substantial vocational adjustment in the transition from military to civilian experience. (Tr. at 53).

## C. ALJ's Findings

The ALJ issued his decision denying benefits on June 30, 2003. (Tr. at 14-23). In his

findings, he determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of disability, August 31, 2000. (Tr. at 18; Tr. at 22, ¶2). The ALJ determined that Plaintiff's residual knee pain from surgery was a severe impairment but that it did not meet or equal a listed impairment or combination of impairments. (Tr. at 18-19; Tr. at 22, ¶¶3,4). The ALJ wrote in his narrative decision that Plaintiff's September 2000 hospitalization for pancreatitis was resolved by December 2000 and that Plaintiff was asymptomatic and off all medication by August 2001. (Tr. at 19). The ALJ found that Plaintiff's subjective complaints and need for strong pain medication were not consistent with the severity of his impairments. (Tr. at 20; Tr. at 22, ¶8).

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") for a wide range of sedentary work. (Tr. at 19; Tr. at 22, ¶5). Based on this RFC, the ALJ found that Plaintiff could not return to his past relevant work, which required a light level of exertion. (Tr. at 21; Tr. at 22, ¶6). Using Plaintiff's RFC, the medical-vocational guidelines, and the testimony of the VE, the ALJ found that Plaintiff was not disabled because he could perform work as an attendance clerk, a grade clerk, and as a maintenance scheduler. (Tr. at 21; Tr. at 22, ¶9). The ALJ also found that Plaintiff's non-exertional impairments did not diminish his RFC. (Tr. at 22, ¶10). As a result, the ALJ determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time relevant to his decision. (Tr. at 22, ¶11).

## II. ANALYSIS

### A. Legal Standards

#### 1. *Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, but less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

### 2. *Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant

is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B. Issues for Review**

Plaintiff presents the following issues for review:

(1) Whether defendant's finding that plaintiff has the ability to do a limited range of sedentary work and can maintain employment is supported by substantial evidence and/or resulted from an error of law; and

(2) The ALJ erred in not giving greater weight to the treating physician's opinion.[7]

(Pl. Br. at 3, 6).

**C. Issue One: Residual Functional Capacity**

The first issue Plaintiff presents to the Court for review is that the ALJ erred in determining that Plaintiff has the RFC for a range of sedentary work. (Pl. Br. at 1, 3).

### *1. Ability to Do a Range of Sedentary Work*[8]

Social Security regulations provide for the ALJ to assess a claimant's RFC before proceeding from Step Three to Step Four of the sequential analysis that determines whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). When assessing a claimant's physical abilities, the ALJ first assesses the nature and extent of the physical limitations and then determines the RFC. 20 C.F.R. § 404.1545(b). "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular

---

[7]Plaintiff initially states the ability to do sedentary work and maintain employment is the only issue for the Court to review. (Pl. Br. at 1). However, Plaintiff briefs the treating physician's opinion in a separate section. (Pl. Br. at 6). The Court therefore considers the ALJ's treatment of the treating physician's opinion to be a distinct point of error.

[8]The wording of Plaintiff's first issue for review alleges a lack of substantial evidence to support the ALJ's RFC determination, but the text of the brief contains no argument to support this allegation. (Pl. Br. at 3-6). However, because Defendant contends that substantial evidence supports the ALJ's determination of RFC, (Def. Br. at 2), the Court addresses the issue.

- 12 -

and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. "RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting." *Id*. at *2 (emphasis in the original). The RFC is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).

The ALJ determined that Plaintiff's only medically determinable severe impairment was the residual effect of his knee surgery in 1989; however, he also found that Plaintiff's knee problems did not limit his ability to ambulate effectively and thus did not meet or equal a listed impairment. (Tr. at 19; Tr. at 22, ¶¶3, 4). Nevertheless, the ALJ restricted Plaintiff's RFC to sedentary work that did not involve more than normal stress and allowed for alternate sitting and standing. (Tr. at 19; *see* Tr. at 22, ¶5). The medical record contains few entries regarding Plaintiff's knee impairment; most of these occurred in the early 1990's. (*See e.g.*, Tr. at 253, 262). For example, in 1993 the Air Force restricted Plaintiff from running and weight-bearing exercises due to his knee injury but noted that he could exercise by means of stationary bike, swimming, and water aerobics. (Tr. at 257). At the hearing, Plaintiff testified that his left knee did not bother him as long as he did not overuse it through sports, extended walking, running, or jumping. (Tr. at 40, 43). Plaintiff also testified that he could stand for two to three hours and that he frequently mowed his lawn. (Tr. at 42-44). The ALJ noted that Plaintiff's problems in the left knee would preclude standing and walking for

prolonged periods of time; because of these restrictions, he explicitly declined to follow the SAMC's determination that Plaintiff could perform medium work, instead finding Plaintiff could perform a range of sedentary work. (Tr. at 20, 430; Tr. at 22, ¶5).

In addition to his knee injury, Plaintiff alleged that he was disabled due to his pancreatitis surgery, ileostomy, diabetes, and high blood pressure. (Tr. at 83). However, all of these ailments were remedied by either surgery or medication and therefore were not disabling. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (holding that a medical impairment that can reasonably be remedied by medication, surgery, or treatment is not disabling). With regards to the pancreatitis surgery and ileostomy, Plaintiff's treating physicians noted that he made a "remarkable recovery" and that the pancreatitis was "nearly totally resolved" by December 2000. (Tr. at 414). On February 14, 2001, Dr. Warnock noted that Plaintiff's "strength and functional capacity is better probably that it has been in a couple of years." (Tr. at 413). Shortly before Plaintiff's ileostomy bag was removed in August 2001, Dr. Warnock observed that Plaintiff was "probably in better shape physically than he's been possibly even in several years." (Tr. at 390, 392). Moreover, Plaintiff testified at the administrative hearing that he would have been able to work even with the ileostomy bag. (Tr. at 40-41). As for his diabetes and high blood pressure, the medical evidence showed that both of these ailments were under control. Dr. Warnock noted on October 3, 2000, that Plaintiff's diabetes was "under good control." (Tr. at 416). Dr. Iurelli noted on April 11, 2001, that although Plaintiff's diabetes mellitus was a "significant problem" and his hypertension was a "problem," both ailments were under control and that Plaintiff seemed to be doing fairly well. (Tr. at 410).

Based on the ALJ's consideration of Plaintiff's knee impairment and the medical evidence in the record, the Court finds that substantial evidence supports the ALJ's determination that

Plaintiff retained the RFC for a range of sedentary work.⁹ *Leggett*, 67 F.3d at 564.

### *2. Ability to Maintain Employment*

Having found that substantial evidence supports the ALJ's determination of Plaintiff's RFC, the Court next considers Plaintiff's contention that the ALJ committed a legal error by not making an explicit finding that Plaintiff could maintain employment. (Pl. Br. at 3).

Plaintiff relies on *Singletary v. Bowen*, 798 F.2d 818 (5th Cir 1989), and *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), for the proposition that the ALJ was required to make an explicit finding that Plaintiff could maintain employment. (Pl. Br. at 4-5). In a case involving a claimant with a mental impairment, *Singletary* held that "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." 798 F.2d at 822. The Fifth Circuit later extended the *Singletary* holding to claimants with physical impairments. *Watson*, 288 F.3d at 217. Whether a claimant is unable to continue working for significant periods of time because of a mental or physical impairment must be supported by medical evidence. *Singletary*, 798 F.2d at 822; *Frank v. Barnhart,* 326 F.3d 618, 619 (5th Cir. 2003). Ordinarily, "the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank*, 326 F.3d at 619. Thus, the ALJ need not make a specific finding regarding ability to maintain employment in every case; such a finding is required only when the medical evidence suggests that an impairment's disabling effects

---

⁹Defendant's brief includes an argument that substantial evidence supports the ALJ's Step 5 determination that Plaintiff could perform work existing in significant numbers in the national economy. (Def. Br. at 2, 19-21). Because Plaintiff did not raise this issue for review, (*see* Pl. Br.), the Court does not address it.

are intermittent or there is an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).

In the instant case, Plaintiff contends that his chronic fatigue, loss of concentration, and pain in the abdomen, knee, and foot all limit his ability to maintain employment. (Pl. Br. at 5). As support for his assertion that *he* would have difficulty maintaining employment, Plaintiff relies upon the VE's testimony that *a person* with poor attendance, poor mental concentration, limited productivity, or difficulty dealing with work-related stress would have difficulty maintaining employment. (Pl. Br. at 3-4) (citing Tr. at 51-52). However, nothing in the medical record supports the proposition that Plaintiff experienced the same limitations as the hypothetical person proposed to the VE. Plaintiff does not cite to the opinion of any physician, and the ALJ noted this absence of corroborating evidence from treating physicians in his narrative discussion. (Tr. at 20). Even if the VE's testimony suggested that Plaintiff could not maintain employment, the VE is not a medical expert qualified to testify as to Plaintiff's medical impairments. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (citing 20 C.F.R. § 404.1513). Likewise, Plaintiff cannot rely upon his own or his wife's testimony that his pain medication affected his ability to concentrate and made him take frequent naps because testimony is not objective medical evidence. *Id.* (subjective complaints must be corroborated at least in part by objective medical evidence); (Tr. at 42-46). Moreover, the ALJ found that Plaintiff's testimony regarding his need for strong pain medication was not credible. (Tr. at 20; Tr. at 22, ¶8).

Due to the lack of supporting medical evidence, Plaintiff has failed to show that he cannot maintain employment. *Singletary*, 798 F.2d at 822; *Frank,* 326 F.3d at 619. Plaintiff has not

provided credible evidence that the disabling effects of his alleged impairments were intermittent; no has he shown, much less alleged, that the ALJ did not adequately considered that the ability to maintain employment is part of an assessment of RFC. Consequently, a separate finding regarding Plaintiff's ability to maintain employment was not required. *Dunbar*, 330 F.3d at 672.

## D. Issue Two: Treating Physician's Opinion

The second issue Plaintiff presents to the Court for review is that the ALJ erred in not giving the appropriate weight to the opinion of his treating physician. (Pl. Br. at 6). Specifically, he contends that the ALJ ignored Dr. Ho's October 16, 2001 diagnosis that Plaintiff had been disabled for more than a year. *Id*.

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Treating physicians can also provide an opinion on disability, and the Commissioner is required to review all medical findings that support such a statement on disability. 20 C.F.R. 404.1527(e). However, the mere statement of "disabled" or "unable to work" by a treating physician does not support a finding of disability. *Id*. This is because "[e]ven though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990)). In other words, while the medical opinion of a treating physician is ordinarily entitled to controlling weight, it is the ALJ who makes the legal determination of whether a claimant is disabled.

In the instant case, Dr. Ho stated on October 16, 2001, that Plaintiff "has been pretty much disabled ever since he had necrotizing pancreatitis during the last twelve months." (Tr. at 406). Dr. Ho's statement regarding Plaintiff's disability is a legal, rather than medical, opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. 404.1527(e). The ALJ noted in his narrative discussion that Plaintiff's pancreatitis was diagnosed on September 9, 2000, and that Plaintiff had fully recovered by August 2001. (Tr. at 20). According to the ALJ, the medical records did not establish that Plaintiff's pancreatitis was of the severity or duration to support a finding of disability as defined in the Social Security Act because it did not last for twelve months or longer. *Id*.; 42 U.S.C. § 1382c(a)(3)(A) (an individual is considered disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted for a continuous period of not less than twelve months). As required by Social Security regulations, the ALJ reviewed the medical findings and determined that the evidence on record did not support Dr. Ho's statement of disability. 20 C.F.R. 404.1527(e).

Upon its own review of the medical evidence, the Court finds that substantial evidence supports the ALJ's decision. Even if the Court were to consider the earlier date of Plaintiff's first complaints of abdominal pain to the Sheppard Air Force Base Hospital on August 24, 2000, rather than September 9, 2000, the date of his transfer to United Regional, the medical records show that Plaintiff's pancreatitis resolved long before August 29, 2001, the date of his discharge after removal of the ileostomy bag. For example, on October 30, 2000, Dr. Ho noted that Plaintiff "has actually made a remarkable recovery despite" his major abdominal surgery, and on December 6, 2000, he wrote that Plaintiff's "pancreatitis is nearly totally resolved." (Tr. at 414). A CT scan of Plaintiff's abdominal region on December 11, 2000, was "unremarkable," and on February 14, 2001, Dr.

Warnock noted that Plaintiff's strength and functional capacity was better than it had been in years." (Tr. at 413). In addition to statements from Plaintiff's treating physicians that Plaintiff's pancreatitis had essentially resolved by December of 2000, the SAMC noted that the evidence supported Plaintiff's allegations of disability for a three to six month period but that the allegations of disability at the time of his October 11, 2001 medical record review were not currently supported. (Tr. at 434).

For the reasons stated above, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's pancreatitis did not last for twelve months or longer and thus was not a disability as defined by the Social Security Act. *Leggett*, 67 F.3d at 564. Good cause therefore existed for the ALJ to reject Dr. Ho's statement regarding Plaintiff's disability. *Newton*, 209 F.3d at 455; *Martinez*, 64 F.3d at 176.

### III. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**, on this 20th day of September, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE